IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:17CV269

| | |
|---|---|
| RUSSELL V. SAWYER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, ) <br> **Acting Commissioner of Social Security,** ) <br> ) <br> Defendant. ) <br> _____ ) | MEMORANDUM AND <br> RECOMMENDATION |

This matter is before the Court on the parties' cross motions for summary judgment (# 9, 10). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying his claim for disability benefits. The issues have been fully briefed, and the matter is now ripe for ruling. For the reasons set forth below, the Court recommends that Plaintiff's motion for summary judgment be granted and the Commissioner's motion for summary judgment be denied.

I.  **Procedural History**

On September 2, 2014, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. (Transcript of Administrative Record ("T.") 18.) On the same date, Plaintiff also protectively filed a Title XVI application for supplemental security income. (T. 18.) In both applications, Plaintiff alleged a disability onset date of February 28, 2014. (T. 18.) The Social Security Administration denied

Plaintiff's claims initially on September 26, 2014. (T. 18.) The claims were denied upon reconsideration on January 23, 2015. (T. 18.) On March 11, 2015, Plaintiff filed a written request for a hearing. (T. 18.)

On July 14, 2016, a disability hearing was held before an Administrative Law Judge ("ALJ") in Asheville, North Carolina. (T. 18.) Charlie A. Edwards, a vocational expert ("VE"), also appeared at the hearing. (T. 18.) Plaintiff was represented by attorney Cynthia A. Strom. (T. 18.)

The ALJ issued a decision finding that Plaintiff was not disabled from February 28, 2014, through the date of his decision, August 31, 2016. (T. 18-26.) Plaintiff requested review of the ALJ's decision. (T. 7.) The Appeals Council denied Plaintiff's request for review. (T. 7-9.) On September 28, 2017, Plaintiff filed the instant action seeking review of the Commissioner's final decision. See Compl. (# 1)

## II. Standard for Determining Disability

An individual is disabled for purposes of receiving disability payments if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). The Commissioner undertakes a five-step inquiry to determine whether a claimant is disabled. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Under the five-step sequential evaluation, the Commissioner must consider each of the following, in order: (1) whether the claimant has engaged in substantial gainful employment; (2)

2

whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or exceed the severity of one or more of the listing of impairments contained in Appendix 1 of 20 C.F.R. Part 404, subpart P; (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520, 416.920; Mastro, 270 F.3d at 177; Johnson, 434 F.3d at 653 n.1.

At the first two steps of the sequential evaluation, the burden is on the claimant to make the requisite showing. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If a claimant fails to satisfy his or her burden at either of these first two steps, the ALJ will determine that the claimant is not disabled and the process comes to an end. Mascio v. Colvin, 780 F.3d 632, 634-35 (4th Cir. 2015). The burden remains on the claimant at step three to demonstrate that the claimant's impairments satisfy a listed impairment and, thereby, establish disability. Monroe, 826 F.3d at 179.

If the claimant fails to satisfy his or her burden at step three, however, then the ALJ must still determine the claimant's RFC. Mascio, 780 F.3d at 635. After determining the claimant's RFC, the ALJ proceeds to step four in order to determine whether the claimant can perform his or her past relevant work. Id. The burden is on the claimant to demonstrate that he or she is unable to perform past work. Monroe, 826 F.3d at 180. If the ALJ determines that a claimant is not cable of performing past work, then the ALJ proceeds to step five. Mascio, 780 F.3d at 635.

At step five, the ALJ must determine whether the claimant can perform other work.

3

Id. The burden rests with the Commissioner at step five to prove by a preponderance of the evidence that the claimant is capable of performing other work that exists in significant numbers in the national economy, taking into account the claimant's RFC, age, education, and work experience. Id.; Monroe, 826 F.3d at 180. Typically, the Commissioner satisfies her burden at step five through the use of the testimony of a VE, who offers testimony in response to a hypothetical question from the ALJ that incorporates the claimant's limitations. Mascio, 780 F.3d at 635; Monroe, 826 F.3d at 180. If the Commissioner satisfies her burden at step five, then the ALJ will find that the claimant is not disabled and deny the application for disability benefits. Mascio, 780 F.3d at 635; Monroe, 826 F.3d at 180.

## III. The ALJ's Decision

In his August 31, 2016, decision, the ALJ ultimately found that Plaintiff was not disabled under sections 216(i), 233(d), and 1614(a)(3)(A) of the Social Security Act. (T. 26.) In support of this conclusion, the ALJ made the following specific findings:

(1) The claimant meets the insured status requirements of the Social Security Act through March 31, 2016.

(2) The claimant has not engaged in substantial gainful activity since February 28, 2014, the alleged onset date (20 C.F.R. §§ 404.1571 et seq. and 416.971 et seq.).

(3) The claimant has the following severe impairments: chronic low back pain and anxiety (20 C.F.R. §§ 404.1520(c), 416.920(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

4

(5) The claimant has the RFC to perform light work, as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), except the claimant could perform simple, routine, repetitive tasks.

(6) The claimant is capable of performing his past relevant work as a flagman, which is performed at the light, unskilled level of exertion. This work does not require the performance of work-related activities precluded by the claimant's RFC (20 C.F.R. §§ 404.1565, 416.965).[1]

(7) The claimant was born on November 25, 1974, and he was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 C.F.R. §§ 404.1563, 416.963).

(8) The claimant has at least a high school education, and he is able to communicate in English (20 C.F.R. §§ 404.1564, 416.964).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See Social Security Ruling ("SSR") 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10) In the alternative, considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

(11) The claimant has not been under a disability, as defined in the Social Security Act, from February 28, 2014, through August 31, 2016 (20 C.F.R. §§ 404.1520(f), 416.920(f)).

(T. 18-26.)

---

[1] The VE testified that Plaintiff's past relevant work consists of the following: paving industry laborer, flagman, and machine operation. (T. 24.)

[2] The VE testified that Plaintiff would be able to perform the requirements of representative occupations such as the following: a car wash attendant, which has 600,000 jobs nationally; a parking lot attendant, which has 200,000 jobs nationally; and an inspector, which has 800,000 jobs nationally. (T. 25.)

### IV. Standard of Review

Title 42, United States Code, Section 405(g) provides that an individual may file an action in federal court seeking judicial review of the Commissioner's denial of social security benefits. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). The scope of judicial review is limited in that the district court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); accord Monroe, 826 F.3d at 186. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig, 76 F.3d at 589 (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's final decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that he was not disabled is supported by substantial evidence in the record, and whether the ALJ reached his decision based on the correct application of the law. Id.

### V. Discussion

**A. The ALJ failed to properly weigh Dr. Reis', Berkwits, orGooch opinions.**

In his first assignment of error, Plaintiff argues that the ALJ discredited the opinions offered by his treating providers without good reason. Mem. Supp. (# 9-1) at 4-8. In

particular, Plaintiff contends that the ALJ failed to give proper consideration to the opinions offered by James R. Reis, M.D., a treating physician at Pardee Internal Medicine Associates.  Id. at 5.  Plaintiff further contends that the ALJ's findings are not supported by substantial evidence.  Id. at 6.  Plaintiff concludes that he is entitled to reversal of the Commissioner's final decision or remand for a new administrative hearing.  Mot. Summ. J. (# 9) at 1.  The Court agrees that remand is warranted.

The Regulations provided as follows with respect to the Social Security Administration's criteria for evaluating opinion evidence:

> Evidence that you submit or that we obtain may contain medical opinions. Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).[3]  The Regulations direct that the ALJ must analyze and weigh the evidence of record with the following factors taken into consideration:  (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors.  20 C.F.R. §§ 404.1527(c), 416.927(c); see Cohen v. Berryhill, 272 F. Supp. 3d 779, 782 (D.S.C. Aug. 23, 2017).  As a general rule, more weight is given to a medical professional who examines a claimant, as opposed to a non-examining source.  20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1); see Patterson v. Colvin, No. 5:12-CV-063-RLV-DCK, 2013 WL 3035792, at *4 (W.D.N.C.

---

[3] This Memorandum and Recommendation reflects the Regulations as they stood on the date of the ALJ's decision, August 31, 2016.

June 17, 2013).

> SSR 96-2p[4] provides that when
>
> a treating source opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *4. SSR 96-2p further requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Id. at *5.

As an example a review of the record reveals the following: Plaintiff was a new patient with Dr. Reis on July 21, 2014. (T. 268.) At that time, Plaintiff was found to be positive for scoliosis, chronic back pain, degenerative joint disease, and allergic rhinitis. (T. 268.) Plaintiff reported that he was on no medication. (T. 268.) Plaintiff presented with complaints of increased back pain and no radiation. (T. 268.) Dr. Reis noted that the

---

[4] With respect to claims filed on or after March 27, 2017, the Regulations have been amended and SSR 96-2p has been rescinded. Cohen v. Berryhill, No. 2:16-CV-01238-RMG-MGB, 2017 WL 3638229, at *5 n.6 (D.S.C. July 31, 2017). The instant case was filed before March 27, 2017; thus, the Court has analyzed Plaintiff's claims under the treating physician rule set forth above.

increased back pain was related to Plaintiff's scoliosis and his work in construction. (T. 268.) Dr. Reis noted that Plaintiff was not in pain at the time of the visit. (T. 269.) Dr. Reis diagnosed Plaintiff with back pain, arthritis, and allergic rhinitis. (T. 270-71.) Dr. Reis prescribed Oxycodone. (T. 270.) Bloodwork and x-rays were ordered. (T. 271.)

On August 20, 2014, Plaintiff had a follow-up visit with Dr. Reis. (T. 279.) Dr. Reis noted that Plaintiff had come in for follow up of his lumbar disc disease. (T. 279.) Plaintiff's x-ray revealed evidence of "some" degenerative joint disease. (T. 279.) Plaintiff was getting some relief from the Oxycodone. (T. 279.) Dr. Reis noted that Plaintiff's labs looked good. (T. 279.) Dr. Reis wanted to get Plaintiff into physical therapy and to an orthopedist, but they would have to wait until Plaintiff got insurance. (T. 279.)

On November 12, 2014, Plaintiff returned to see Dr. Reis. (T. 283.) Plaintiff presented with acute chronic back pain. (T. 283.) Dr. Reis noted that Plaintiff was trying to get on Medicaid, and after that had been accomplished, Plaintiff would be set up for an MRI. (T. 286.) Plaintiff was given Dilaudid for breakthrough pain. (T. 286.)

On February 13, 2015, Plaintiff saw Dr. Reis for follow up of his lumbar disc disease. (T. 382.) It was noted that Plaintiff was seeing Asheville Neurosurgery and being set up for epidurals. (T. 382.) Dr. Reis added Ativan to Plaintiff's medication regimen. (T. 385.)

On March 13, 2015, Plaintiff saw Dr. Reis for follow up of his lumbar disc disease and anxiety. (T. 378.) It was noted that Plaintiff was taking Dilaudid and Oxycodone for pain. (T. 378.)

9

On March 16, 2015, Plaintiff was seen by Dr. Reis for follow up of his lumbar disc disease. (T. 374.) Dr. Reis noted that Plaintiff was taking Dilaudid and Percocet routinely. (T. 374.) Plaintiff was transitioned to Percocet and Duragesic Patch. (T. 376.)

On April 10, 2015, Plaintiff was seen by Dr. Reis for follow up on his lumbar disc disease, degenerative joint disease, and anxiety. (T. 370.) It was noted that Plaintiff was using a Duragesic Patch and Oxycodone and tolerating the combination well. (T. 370.)

On April 29, 2015, Plaintiff saw Dr. Reis for follow up of his lumbar disc disease, scoliosis, anxiety, and insomnia. (T. 366.) It was noted that Plaintiff was seen by neurosurgery for his spine, and they were trying to get Plaintiff in with pain management. (T. 366.)

On June 10, 2015, Plaintiff saw Dr. Reis for follow up of his degenerative joint disease, anxiety, and chronic pain. (T. 362.) Dr. Reis noted that he would like to get x-rays, blood work, and physical therapy, but Plaintiff was unable to afford it. (T. 362.)

On July 10, 2015, Plaintiff saw Dr. Reis for follow up of his lumbar disc disease and insomnia. (T. 358.) On August 6, 2015, Plaintiff was seen by Dr. Reis for follow up and medication refills. (T. 354.) Dr. Reis noted that Plaintiff was feeling better. (T. 354.) Dr. Reis also noted that Plaintiff would continue his stretching exercises and walking at home. (T. 356.) The plan was to get Plaintiff formal physical therapy after he got on Medicaid and to wean him off the medications. (T. 356.)

On August 31, 2015, Plaintiff was seen by Dr. Reis for follow up on his degenerative joint disease, scoliosis, lumbar disc disease, and anxiety. (T. 350.) Dr. Reis noted that Plaintiff's pain was fairly well controlled with the Duragesic Patch and Percocet. (T. 350.)

On September 30, 2015, Plaintiff was seen for follow up of his scoliosis, lumbar disc disease, and anxiety. (T. 346.) On October 30, 2015, Plaintiff was seen by Dr. Reis for a follow up of his scoliosis, lumbar disc disease, and anxiety. (T. 342.) Plaintiff's anxiety and depression were addressed. (T. 346.) Dr. Reis noted that Plaintiff would get Medicaid in January and then he could get more assistance. (T. 346.)

On December 30, 2015, Plaintiff was seen by Dr. Reis for an office visit and medication refill. (T. 338.) Plaintiff was being followed for lumbar disc disease and anxiety issues. (T. 338.) Dr. Reis noted that Plaintiff would benefit from physical therapy, but he had no insurance. (T. 338.) Plaintiff was referred to pain management for evaluation. (T. 340.)

On January 28, 2016, Plaintiff saw Dr. Reis for follow up of his lumbar disc disease and insomnia. (T. 334.) It was noted that Plaintiff was scheduled to see pain management the next week. (T. 334.) It was also noted that Plaintiff was seen by a neurosurgeon in 2015 and epidural injections were tried, without improvement. (T. 334.) Finally, Dr. Reis noted that Plaintiff was using Duragesic Patch and Oxycodone 10 for breakthrough pain. (T. 334.)

On March 10, 2016, Plaintiff saw Dr. Reis for follow up on his lumbar disc disease and scoliosis. (T. 331.) Plaintiff presented with complaints of back pain and insomnia. (T. 332.)

On April 8, 2016, Dr. Reis saw Plaintiff for follow up on his lumbar disc disease, anxiety, and insomnia. (T. 328.) Dr. Reis noted that Plaintiff was released from pain management for failing a drug test. (T. 330.) Dr. Reis noted that Plaintiff was attempting

11

to get full disability and Medicaid. (T. 328.) Dr. Reis further noted that once Plaintiff got Medicaid, he could get in with physical therapy, which would really help. (T. 330.)

In his opinion the ALJ did not discuss, much less assign any weight, to the opinions of the three treating physicians. The Court concludes that the ALJ did not properly evaluate treating source Dr. Reis opinion or the opinion of the other two doctors who examined and treated the Plaintiff. In particular, a review of the ALJ's decision reflects that he failed to specifically state what weight he gave to Dr. Reis' opinion. See Nken v. Holder, 585 F.3d 818, 822 (4th Cir. 2009) ("Established precedent dictates that a court may not guess at what an agency meant to say, but must instead restrict itself to what the agency actually did say."). Therefore, the ALJ's August 31, 2016, opinion fails to comply with both the Regulations and SSR 96-2p. Consequently, remand is warranted.

**B.      The ALJ did not violate SSR 82-59.[5]**

In his next assignment of error, Plaintiff argues that the ALJ erred by finding that he was partially credible, in part, because he sought only conservative treatment for his chronic back pain. Pl.'s Mem. Supp. (# 9-1) at 8-10. Plaintiff contends that this finding violates SSR 82-59.[6] Id. Plaintiff concludes that he is entitled to reversal of the Commissioner's final decision or remand for a new administrative hearing. Pl.'s Mot. Summ. J. (# 9) at 1. The Court is not persuaded.

---

[5] The Court's recommendation for remand on the first issue is dispositive of the case, but the Court has addressed the remaining issues to demonstrate that, in the undersigned's opinion, there was no additional error.

6 With respect to this assignment of error, Plaintiff interchangeably cites to "SSR 82-59" and "SSR 85-29." This appear to be a typographical error and that Plaintiff intended to cite to SSR 82-59.

12

At the outset, the Court notes that Plaintiff's argument is misplaced because SSR 82-59 does to apply here. "SSR 82-59 only applies to '[a]n individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source.'" Myers v. Comm'r Soc. Sec. Admin., 456 F. App'x 230, 232 (4th Cir. 2011) (quoting SSR 82-59, 1982 WL 31384, at *1). In the instant case, the ALJ did not find that Plaintiff otherwise qualified as disabled, but that he unjustifiably failed to follow prescribed treatment that could restore his ability to work. See (T. 18-26.) Rather, the ALJ found that Plaintiff's treating sources' failure to refer him for more than conservative treatment undermined Plaintiff's credibility. See (T. 22-23.) Therefore, SSR 82-59 does not apply to the ALJ's reasoning in this case. See Byers v. Berryhill, No. 1:17CV103, 2018 WL 318466, at *8 (M.D.N.C. Jan. 5, 2018); Flores v. Colvin, No. 1:13CV513, 2016 WL 831941, at *5 (M.D.N.C. Feb. 29, 2016); Keever v. Astrue, No. 1:11-CV-148, 2012 WL 2458376, at *5 n.4 (W.D.N.C. June 1, 2012).

In the instant case, the ALJ applied the two-part standard set forth in the Regulations for evaluating subjective statements regarding intensity, persistence, and limiting effects of the symptoms caused by Plaintiff's impairments (T. 22-24). See 20 C.F.R. §§ 404.1529, 416.929. In particular, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were "not entirely credible." (T. 22.) The ALJ further found that the medical evidence did not support the degree of limitations alleged and portrayed by Plaintiff. (T. 23.) Plaintiff described fairly limited activities of daily living, but two factors weigh against considering

13

these allegations to be strong evidence supporting a finding that Plaintiff is disabled. (T. 23.) First, Plaintiff's allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. (T. 23.) Second, even if Plaintiff's activities of daily living are as limited as alleged, it is difficult to attribute that degree of limitation to Plaintiff's medical conditions, as opposed to other reasons, in light of the relatively weak medical evidence and other factors. (T. 23.)

The ALJ concluded that Plaintiff was only "partially credible" for the following reasons: Plaintiff provided inconsistent information relating to his history or mental health treatment for his complaints. (T. 23.) Plaintiff sought only conservative treatment for his complaints of chronic back pain. (T. 23.) Surgery was not recommended, and he was discharged from medication management for positive drug screens and stolen medication. (T. 23.)

The ALJ did not err by noting that Plaintiff had sought only conservative treatment, a finding of fact, supported by the record, which provides support for the ALJ's conclusion that Plaintiff's allegations he suffered disabling back pain were only "partially credible." (T. 23); see (T. 290) (Dr. Thompson noted that Plaintiff's MRI was "essentially normal"); (T. 292) (P.A. Schlegel noted that Plaintiff was "[n]ot in acute distress."); (T. 298) (P.A. Schlegel noted that Plaintiff's x-rays showed only <u>mild</u> multilevel degenerative changes and Plaintiff's physical exam showed <u>very</u> <u>mild</u> sensory abnormalities); (T. 299) (Plaintiff's January 6, 2015 lumbosacral x-ray revealed "mild degenerative changes" and "mildly decreased disc space"); (T. 314) (Dr. Berkwits noted that Plaintiff's January 9, 2015 MRI of his lumbar spine revealed the following: Plaintiff had only "[m]ild disc

14

disease" at L4-L5; Plaintiff could ambulate without an assistive device; Plaintiff's gait was not antalgic or ataxic; Plaintiff requires <u>no</u> assistance to go from sitting to standing or standing to sitting; and Plaintiff exhibited <u>no</u> noticeable pain behavior); (T. 316) (Dr. Berkwits diagnosed Plaintiff with the following: chronic low back pain, <u>mild</u> lumber spondylosis, <u>mild</u> lumbar degenerative disc disease at L4-L5, and opioid dependence).

In sum, the ALJ did not violate SSR 82-59. Moreover, the ALJ's finding that Plaintiff had only received conservative treatment is consistent with the Regulations and supported by substantial evidence. Therefore, this assignment of error must be overruled.

## C. The ALJ did not err in his formulation of Plaintiff's RFC.

In his final assignment of error, relying on SSR 85-16 and <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015), Plaintiff argues that the ALJ erred in the formulation of his RFC. Pl.'s Mem. Supp. (# 9-1) at 11-13. Plaintiff concludes that he is entitled to reversal of the Commissioner's final decision or remand for a new administrative hearing. Mot. Summ. J. (# 9) at 1. The Court is not persuaded.

RFC is defined as "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). SSR 96-8p provides that the ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." <u>Monroe</u>, 826 F.3d at 189 (quoting SSR 96-8p). In formulating a RFC, the ALJ is not required to discuss each and every piece of evidence. See <u>Reid v. Comm'r of Soc. Sec.</u>, 769 F.3d 861, 865 (4th Cir. 2014). The ALJ is, however, required to build a logical bridge from the evidence of record to his conclusion.

15

Monroe, 826 F.3d at 189; see also Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000). With respect to the function-by-function analysis, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his other work-related abilities on a function-by-function basis." SSR 96-8p, 1996 WL 374184, at *1.

SSR 85-16 provides that the determination of mental RFC involves the consideration of the following types of evidence:

- History, findings, and observations from medical sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations, delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias; psychophysiological symptoms; withdrawn or bizarre behavior; anxiety or tension.
- Reports of the individual's activities of daily living and work activity, as well as testimony of third parties about the individual's performance and behavior.
- Reports from workshops, group homes, or similar assistive entities.

SSR 85-16, 1985 WL 56855, at *2.

In Mascio, the Fourth Circuit Court of Appeals held that limitations in concentration, persistence, or pace cause work-related limitations with staying on task, and while the ALJ may find that no limitations are required, an explanation is necessary. 780 F.3d at 638. The Fourth Circuit Court of Appeals specifically held:

> Perhaps the ALJ can explain why [the plaintiff's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [the plaintiff's] residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect [the plaintiff's] ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ gave no explanation, a remand is in order.

Id. (internal citation omitted).

In the instant case, at step two in the sequential evaluation, the ALJ found that

Plaintiff's anxiety was a severe impairment.[7] (T. 20.)  When the ALJ formulated Plaintiff's RFC, he concluded that Plaintiff retained the ability to perform light work with the ability to "perform simple, routine, repetitive tasks."  (T. 22.)  The record evidence supports the ALJ's finding that despite Plaintiff's anxiety, he remained capable of performing those tasks required by his past relevant work as a light, unskilled flagman. (T. 22, 24.)  When evaluating the evidence related to Plaintiff's mental functioning, the ALJ recognized that Plaintiff testified to performing chores, both inside and outside the house, running errands for his mother, hanging out with friends on a daily basis, watching television, leaving the home on an independent basis, and driving a car.  (T. 21.)  The ALJ also noted that Plaintiff was evaluated for mental health services on July 27, 2015, and received a diagnosis of general anxiety disorder and a recommendation for outpatient therapy, yet Plaintiff apparently did not follow through with treatment beyond the initial evaluation.  (T. 23.)  Consequently, the record evidence on Plaintiff's mental health is sparse.

Plaintiff has failed to refer this Court to <u>any</u> evidence suggesting greater limitations than those found by the ALJ.  <u>See</u> Pl.'s Mem. Supp. (# 9-1).  This Court is limited to the evidence before it, which reveals the following: At Plaintiff's July 14, 2016 hearing, he testified that he can mow the grass.  (T. 51.)  Plaintiff also testified that he suffers with "a lot" of anxiety.  (T. 56.)  In particular, Plaintiff explained that he has a hard time sleeping because his mind races. (T. 56.)  Plaintiff also has "bad" thoughts about himself.  (T. 56-

---

[7] A "severe" impairment is one that "significantly limits [the claimant's] physical or mental ability to do basis work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c); <u>accord</u> <u>Riggs v. Berryhill</u>, No. 4:16-CV-00011-F, 2017 WL 1102620, at *2 n.4 (E.D.N.C. Mar. 24, 2017).

17

Case 1:17-cv-00269-MR-DLH   Document 12   Filed 05/16/18   Page 17 of 20

57.) Plaintiff testified that he gets along fine with other people. (T. 62.) Plaintiff admitted having had suicidal thoughts, but he testified that he had never acted on them. (T. 57.) Plaintiff testified that he takes Ativan for anxiety, and it helps him sleep. (T. 57.) Plaintiff testified that he hangs out with friends (T. 61) and gets out of the house every day (T. 62) by going to a friend's house or running errands (T. 62). Plaintiff testified that he lives with his mother. (T. 64). Plaintiff testified that he helps around the house by washing dishes and doing laundry. (T. 64).

Plaintiff's treatment records have a <u>very</u> limited discussion of Plaintiff's anxiety. The record does show that Plaintiff was diagnosed with a generalized anxiety disorder. (T. 308.) Plaintiff presented for treatment of his anxiety on numerous occasions. (T. 296, 304, 328, 338-39, 342, 346, 350, 354, 362, 366, 370, 375, 378, 382.) Plaintiff was treated for his anxiety and related insomnia with Ativan. (T. 330, 333, 336-37, 340, 344, 348, 352, 356, 360, 365, 368, 381, 384.)

In sum, Plaintiff has not pointed to any evidence that contradicts or undermines the ALJ's analysis as it relates to his RFC. Therefore, Plaintiff has failed to show legal error by the ALJ or that his RFC finding is not supported by substantial evidence. See Craig, 76 F.3d at 589 (recognizing that the District Court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard."). Therefore, this assignment of error must be overruled.

## VI. Conclusion

In light of the foregoing, the Court RECOMMENDS that Plaintiff's motion for

summary judgment (# 9) be GRANTED, and the case be remanded for further proceedings. The Commissioner's motion for summary judgment (# 10) be DENIED.

Signed: May 16, 2018

*Dennis L. Howell*

Dennis L. Howell
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal.  See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).